# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BLAISE LANZI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. |
| vs. | ) |
| | ) |
| HAWTHORNE RESIDENTIAL PARTNERS, LLC, | ) |
| and WHITE EAGLE PROPERTY GROUP, LLC, | ) |
| | |
| Defendants. | |

## COMPLAINT

## I. JURISDICTION

1. This is a suit for relief from discrimination instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621 *et seq.* ("ADEA"). The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Blaise Lanzi timely filed his charges of discrimination against defendants Hawthorne Residential Partners, LLC and White Eagle Property Group, LLC with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this complaint within 90 days after receipt of his right-to-sue notices.

## II. PARTIES

3. Plaintiff Blaise Lanzi ("Plaintiff") is a United States citizen over the age of nineteen and a resident of Shelby County, Alabama.

4. Defendant Hawthorne Residential Partners, LLC ("Hawthorne") is a limited liability company based in North Carolina and an employer as that term is contemplated under Title VII and the ADEA.

5. Defendant White Eagle Property Group, LLC ("White Eagle") is a limited liability company based in New York and an employer as that term is contemplated under Title VII and the ADEA. Hawthorne and White Eagle are collectively referred to herein as "Defendants."

## III. FACTS

6. Plaintiff is male.

7. In or about March of 2010, Plaintiff became employed by Defendants' predecessor-in-interest at Wildwood Crossing, an apartment complex in Birmingham, Alabama.

8. In or about December of 2018, White Eagle bought the complex.

9. At that time, Hawthorne assumed management of the complex on behalf of White Eagle.

10. The complex was renamed Avenues of Lakeshore Apartments.

11. At the time of White Eagle's purchase of the complex, Plaintiff was the manager of the complex.

12. Plaintiff became employed by Hawthorne with White Eagle's purchase of the complex.

13. Plaintiff was hired as manager of the complex, a position Defendants referred to as Community Manager.

14. Plaintiff was 44 years old at the time.

15. Layne Jennings, Hawthorne's Regional Manager, became Plaintiff's immediate supervisor.

16. Jennings is female.

17. Jennings was in her 30's at the time.

18. Jennings' supervisor was Amy McNeeley, Hawthorne's Regional Vice President.

19. McNeeley is female.

20. McNeeley was in her 40's at the time.

21. Other apartment complexes under McNeeley and Jennings were managed almost exclusively by females.

22. Though Hawthorne managed the complex for White Eagle, White Eagle employees were involved in the management of the complex.

23. Joe Bernstein, Senior Asset Manager for White Eagle, corresponded and spoke with Plaintiff about management of the complex.

24. White Eagle employees regularly sent emails to the complex posing as potential customers and tracked responses.

25. Plaintiff sent daily reports to Jennings, which were forwarded to White Eagle employees.

26. On or about February 18, 2019, McNeeley inadvertently included Plaintiff in an email sent to White Eagle employees and Jennings.

27. Therein, McNeeley stated that an employment offer had been made to Brittany Hyde for the position of Community Manager at the complex.

28. Hyde is female.

29. Hyde was in her early 30's at the time.

30. Plaintiff replied back asking, "who is Brittany Hyde?".

31. McNeeley replied that she was sorry and that she had not meant to include Plaintiff in the email.

32. On or about the next day, Plaintiff was placed on a conference call with McNeeley, Jennings, and Kerri Shellman, Hawthorne's Vice President of Human Resources.

33. McNeeley told Plaintiff that he was being given two disciplinary actions: a first written warning for "performance deficiencies" and a second written warning for "venting down" by discussing McNeeley's email with his subordinates and then leaving the complex for the day.

34. Both disciplinary actions were unfounded, based on false allegations, and pretextual.

35. Plaintiff had no prior disciplinary actions.

36. Further, no one at Hawthorne or White Eagle had expressed anything negative about Plaintiff's performance.

37. McNeeley further informed Plaintiff that he was being demoted to the position of "Leasing Manager" at the complex.

38. McNeeley further told Plaintiff that the decision had come from White Eagle as much as it had Hawthorne.

39. Plaintiff had previously asked Jennings about a leasing management position at the complex in regard to potential promotion of a Leasing Consultant there, and Jennings had told him that Hawthorne had no "Leasing Manager" position.

40. The compensation offered to Plaintiff for the "Leasing Manager" position was approximately half of his compensation as Community Manager.

41. Hyde was placed into the position of Community Manager at the complex.

42. Given the circumstances– primarily the drastic pay cut, loss of position, placement into a lesser and suspect position, false allegations and unfounded discipline, and Defendants' replacing him without any word or warning– Plaintiff had no alternative but to resign.

43. Consequently, on or about February 21, 2019, Plaintiff tendered his resignation.

## IV. CAUSES OF ACTION

### COUNT I

### TITLE VII- DEMOTION

44. Paragraphs 1-38 above are incorporated by reference.

45. While White Eagle contracted with Hawthorne to manage the complex and employ the people who worked there, it nevertheless retained control over Plaintiff's employment in supervising and monitoring his work and, more importantly to this case, being actively involved in the decision to demote him.

46. Defendants were Plaintiff's joint employers.

47. Defendants violated Plaintiff's rights under Title VII by demoting him because of his sex.

48. Plaintiff's gender was a motivating factor in the decision to demote him.

49. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendants' acts as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendants to make Plaintiff whole by placing him in the position he would have occupied in the absence of discrimination with provision of lost benefits and perquisites of employment (or, alternatively, providing front-pay), providing back-pay and other monetary losses, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendants, and their agents, employees, successors, and those acting in concert with Defendants from further violation of Plaintiff's rights under Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT II

## ADEA- DEMOTION

50. Paragraphs 1-38 and 45-46 above are incorporated by reference.

51. Defendants violated Plaintiff's rights under the ADEA by demoting him because of his age.

52. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and other benefits.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendants' employment acts as described herein violated the ADEA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendants, and their agents, employees, successors, and those acting in concert with Defendants from further violation of Plaintiff's rights under the ADEA;

(iii) That the Court enter an Order requiring Defendants to make Plaintiff whole by placing him in the position he would have occupied in the absence of

discrimination with provision of lost benefits and perquisites of employment (or, alternatively, providing front-pay), providing back-pay and other monetary losses, and ordering Defendant to liquidated damages;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other available legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees and expenses.

## COUNT III

## TITLE VII- TERMINATION

53. Paragraphs 1-43 and 45-46 above are incorporated by reference.

54. Defendants violated Plaintiff's rights under Title VII by constructively terminating his employment because of his sex.

55. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendants' act as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendants to make Plaintiff whole by providing back-pay and other monetary losses, front-pay, and ordering Defendants to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendants, and their agents, employees, successors, and those acting in concert with Defendants from further violation of Plaintiff's rights under Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT IV

## ADEA- TERMINATION

56. Paragraphs 1-43 and 45-46 above are incorporated by reference.

57. Defendants violated Plaintiff's rights under the ADEA by constructively terminating his employment because of his age.

58. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and other benefits.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendants' employment act as described herein violated the ADEA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendants, and their agents, employees, successors, and those acting in concert with Defendants from further violation of Plaintiff's rights under the ADEA;

(iii) That the Court enter an Order requiring Defendants to make Plaintiff whole by providing back-pay and other monetary losses, front-pay, and ordering Defendants to pay liquidated damages;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other available legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees and expenses.

        Respectfully submitted,

        s/ Adam M. Porter
        Adam M. Porter
        Attorney for Plaintiff
        Adam M. Porter, LLC
        2301 Morris Avenue, Suite 102
        Birmingham, Alabama 35203
        Phone: (205) 322-8999
        Facsimile: (205) 402-4619
        Email: adam@adamporterlaw.com


Plaintiff requests trial by struck jury.

        s/ Adam M. Porter
        Attorney for Plaintiff


<u>Defendants' Addresses</u>:
Hawthorne Residential Partners, LLC
c/o National Registered Agents, Inc., Registered Agent
2 North Jackson Street Ste 605
Montgomery, Al 36104

White Eagle Property Group, LLC
c/o Abe Spitz, Chief Operating Officer
12 College Road
Monsey, NY 10952